You may begin whenever you're ready, Counsel. Thank you, and may it please the Court, Matthew Wessler, on behalf of Christopher Sulyma. With the Court's permission, I'd like to reserve four minutes for rebuttal. You may, but again, you'll have to manage your time. Yes, Your Honor. When Congress created a statute of limitations for breach of fiduciary duty claims under ERISA, it set a general period of six years to impress upon those vested with control of pension funds the importance of the trust they hold, and to ensure that fiduciaries who violated that trust could not easily find refuge in a time bar. Congress crafted a narrow exception from that general period that shortened the limitations clock to three years. Initially, that three-year exception applied in cases where a participant had either actual or constructive knowledge of the breach. But in 1987, Congress specifically amended the provision to remove the constructive knowledge trigger. As a result, to dodge an otherwise timely suit based on this exception, the defendant must now meet a high bar. At summary judgment, it must come forward with undisputed evidence that a participant had actual knowledge of all the facts that formed the basis of a claim more than three years before its filing. The question here is whether the defendants have met that burden by establishing that Mr. Salima had actual knowledge of all of the necessary facts forming the basis of his imprudent investment claims. The answer to that question is no, and it is no for two independent reasons. First, it is undisputed that Salima himself did not personally know any of the facts that the defendants and the district court relied upon. By definition, that means the only way the three-year exception could apply here is through a constructive knowledge, not actual knowledge standard. Second, even had Salima actually seen and understood the material contained in certain plan documents that the district court thought were relevant, those documents do not disclose any information about the fiduciary's process for selecting the investments. But the claims in this case are imprudent investment claims, and they turn on the reasonableness of both the substantive investment allocations and the fiduciary's process for selecting those investments. And so knowing all of the facts to establish a breach claim here requires knowing something about the nature of the defendant's process that would, at a minimum, permit an inference that it was flawed. The information contained in the plan documents about the investment allocations, however, say nothing about this. It is relevant only, in other words, to the first element of an imprudent investment breach claim. And in fact, this Court made clear in Tybil several years ago that that kind of information, knowledge of information, materials contained in plan documents, is insufficient to establish actual knowledge under Section 1113. I'd like to return back to the first reason why the three-year limitations exception cannot apply here. Selima lacks actual knowledge of any of the facts that the defendant and the district court say are relevant. And on this, I think it can hardly be clearer. Sotomayor I have one question for you about the relationship between actual knowledge and constructive knowledge. And I'm not suggesting that this is the case here, but I just want your thoughts. Is there a willful blindness standard that's built in? In other words, if, let's say, a report is sent individually to your client and it lays out everything, the method of selecting investments, all the reasoning behind a particular investment and the investment itself, and your client chooses not to read it or just says, well, I don't care or I don't want to know, does that count? So that's so this is a question. I know that's not your case. Yes. And I'm not asking you to concede that. But just for purposes of analyzing the statute, where does that fall? Sure. I think I would answer that in two different ways, Your Honor. First, I think the Seventh Circuit got it right in Fish when they addressed that particular issue. And there, Judge Hamilton said, the statute doesn't say anything about willful blindness. That is a standard that is typically applied in criminal cases in the context in which someone is denying knowledge or refusing to read. It is, however, Judge Hamilton said, possible that you might find a case where the evidence would, in fact, suggest that somebody just refused to read a document. But if that were true, it would undoubtedly be an issue for trial. So the question at this stage of the case is whether there's a genuine dispute about whether this participant knew anything. And so to the extent that willful blindness plays any role, and I don't think that the statutory language in 1113 permits for an inclusion of that standard, it would be something that would have to come out in front of a factfinder. Here, however, of course, as Your Honor, I think, suggested, the district court was quite clear. There's an entire section in the opinion that's labeled findings of fact, in which the Court said Mr. Salima never saw any of the documents that the defendants say matter in this case. The only documents he saw, of course, were the account statements, which in a deposition he omitted reading. But none of those statements say anything about even the most basic information that the defendants say is relevant here, the allocation amounts between hedge funds, private equities, and other. And so he personally had absolutely no knowledge whatsoever of even the first element of a breach claim, let alone the second. And so the only way that the district court could have charged Salima with actual knowledge here and trigger the three-year exception was to attribute to him as a matter of law knowledge that he did not personally have. And that, of course, is exactly the constructive knowledge standard. And I think the trial court was not alone in the Ninth Circuit, at least in terms of district court cases, to take this approach. Where did the – what do you think is the controlling circuit court case that means you win? Well, I think there are several cases, Your Honor. Tybill is number one. In Tybill, this Court said – I guess this is putting aside – putting to one side this constructive knowledge question, but Tybill said even if you take on its face all of the information contained in plan documents, when the claim at issue here is an imprudent investment claim, that is the wrong type of evidence, because it does not tell a participant anything about the reasonableness of the process of fiduciary use to select the investments. And you can go back further, trace this rule back further to a case this Court had 30 years ago called Waller, which is really the first case in which the Court looked at this three-year exception. And there it said very much the same thing, that under this actual knowledge standard, you need to – the defendant needs to show, if they're going to try to take advantage of this exception, that a participant actually knew all of the facts to establish their claim. And Waller is important because in Waller, the claim was very similar to what we have here, an imprudent investment claim. The allegation was the fiduciary included an investment that was imprudent. And there what the Court said very clearly was not only do you need to know what that investment is, but you also need to know some fact that tells you that it departed dramatically from the prevailing standards. And there the Court said, this is in the Ninth Circuit's decision, what those facts were, were publicized accounts of financial difficulty of the company and the ultimate insolvency. It's those kinds of facts that at a minimum allow you to infer that there was a flaw in the process. And how do you distinguish Blanton on which opposing case? There are certainly a line of – there are certainly a line of cases that – where this – where the trigger, the actual knowledge trigger can occur based just on a transaction. But those cases, almost to a – to an absolute single one, are prohibited transaction cases. Well, I guess the other – what I was thinking of with Blanton is that the individual, the plaintiff, was a party to the transaction, which is also – makes it also different that if you're a party to a transaction, you do have knowledge of the transaction. That's exactly right. And I think there was a – what happened here was really a category error. The district court applied this Blanton case and appeared to view the claims in this case as something more akin to a prohibited transaction, but that is – that is fundamentally not what these claims involve. And the allegations in this case are imprudent investment claims and are, therefore, controlled by Tibble and Waller and not Blanton. Just to perhaps return briefly to Your Honor's question about constructive knowledge versus actual knowledge, I think this Court's decision in Scharf establishes the basic rule or principle, which is that a document sent to a participant or a beneficiary charges the – even without having read it, means that the beneficiary or participant is on constructive knowledge of the information in that document. That's what we have here. We don't have a situation where there's undisputed testimony in the record that the participant had read those documents or knew them, bracketing for one second the fact that even if Mr. Salima had read everything that they say is relevant here, it would have disclosed nothing about the nature of the selection process that is at the core of these imprudent investment claims. And fundamentally, that is what led the district court astray. He would have known that there were hedge fund investments. Of course. We don't dispute that. Had he read certain of those documents, those documents would have disclosed that the investment included hedge funds, although, to be clear, even on that point, the documents themselves were internally inconsistent. Some of them disclosed a percentage at the high end of 37. Others said it's in the 20s. Some didn't say anything at all. And to the extent that they identified some possible drag or short-term losses, they also told participants all over the place, disregard those short-term losses because you need to take a longer-term approach and the appropriate way to evaluate the reasonableness of this strategy is on an 8 to 10-year cycle. And so even if you had read all of those and had understood that it contained some amount of hedge fund in the investment allocation, it would have told you nothing about whether the strategy that the fiduciaries took here was so far below the accepted, settled, prevailing standards that it triggered a breach of the imprudence that a fiduciary must have whenever they make these claims. If the court has no other questions, I'd like to... You may. Okay. I was just going to ask if you wanted to reserve. We'll hear from Mr. Buckley. Good morning. I'm John Buckley. May it please the court. Let me begin by talking about the statute of limitations. So there are two statute of limitations, a three-year and a six-year, and they serve different purposes. The three-year is not an exception to the six. It has different goals. The six-year statute of limitations begins to run on the last date that the violation occurred and runs six years from that date. The three-year statute of limitations begins on the earliest date in which the plaintiff had actual knowledge of the breach or violation. The six-year is meant to be a safeguard against stale claims. The three-year instead serves the purpose of making sure plaintiffs don't sleep on their rights, preventing plaintiffs from gaming the system by, even though they have the information, by waiting and seeing how the investment plays out. But it doesn't say when they have the information. It says when they know of the breach or violation. Well, let me move on to that issue then, because I want to explain that. So, because in your answer, it would be helpful to hear in your view whether there's a distinction between the prohibited transaction, which you may know of immediately, and the kind of claim that exists in this case. Okay. There are two or three questions, I think, you've asked. So, let me divide them up and address them. First, we take on the question of what actual knowledge is. So, here, all the information was provided electronically through two different websites that targeted emails with hyperlinks to the plaintiff, was provided repeatedly, was always available on those websites 24-7 every day of the year. Through various documents, the fund fact sheets, the summary plan disclosures, the annual disclosures, and the qualified investment alternative notices, all the information was provided. The Department of Labor has said when there are required disclosures under ERISA, providing that information electronically on the company's website is effective communication of that information to the plan participant. We cited that provision in our brief. The plaintiffs just simply ignore it. So, we have the Department of Labor saying that making it, posting it on a website, right, is equivalent to two things. It's equivalent to hand delivery of the information to the person, as if I handed it to you right now, or it's equivalent of my sending it to you by first-class mail, and it's effective communication of that information. Again, the Department of Labor is responsible for enforcing ERISA. That's its position, and they simply ignore the regulation. Then, the case law is uniform. You have to read the Brown decision of the Sixth Circuit, which is reflective of many other decisions we cite, and it says the following. Actual knowledge is conveyed when the plan participant is told how to access the information. I want to repeat that. Actual knowledge is conveyed when the plan participant is told how to access the information. There's no requirement that the plan participant actually access it. In fact, read it or understand it. I have two questions that arise from that argument. The first is that that decision appears to conflate constructive knowledge with actual knowledge, and the statute was amended to remove constructive knowledge. So that's my first issue with the Brown decision. But the second is I'd like you to respond to counsel's argument that even if every word had been read, it would not have disclosed and his client would not have known about the methods of selecting investments. Okay, good. On the first proposition, whether it's constructive knowledge, every case that has addressed this issue of providing information electronically has held that that's actual knowledge. So if this court were to reach a different conclusion— Even if he doesn't own a computer and never looks into his mailbox, that's actual knowledge just from sending? Because in a situation where— That sounds like constructive knowledge to me. Well, you're putting hypothetical, but obviously it's not the facts of this case. Here what we know is that the plaintiff, Mr. Salima, accessed the Net Benefits website 68 times and viewed 1,000— That could be constructive knowledge, but just taking it away from this case, what you just said, that if you send it by the computer, there's actual knowledge. Now, that would apply—you want to apply it to him, but if we adopt that, it applies also to the next case when the man doesn't own a computer, right? Well, I guess when we get to the next case, you can get to the next case, but— But when we pick up one end of the stick, we pick up the other end, and it'll be cited to us. So, the question, I think, deserves an answer. Okay. And my answer is, when the employee is provided with a computer by the company, as here, when he demonstrates that he knows how to use the computer, when he logs into Net Benefits, as here, and sets up an account, when he, in his words, peruses the contents of the website before making his investment decision, in that case, actual knowledge is conveyed by the information on the website. Those are the limitations of what I'm arguing. I'm not arguing about the person who has no computer at all. That's a different situation. So, I'm limiting it to that situation, which is our case. And we also know that, here, he responded to the emails he got. When he got emails about Net Benefits, we know he went in the next day and changed some of his account settings. We know he registered for seminars via the Internet. We know that he used the system. There's no dispute that he was conversant with computers. Right, but this was done on summary judgment. Is your actual knowledge that this is knowledge, that it's constructive knowledge, or that anybody who does X, Y, and Z has actual knowledge? Well, I'm saying where the employee is told how to access the information electronically and where the employee has the means to so access, then that's actual knowledge. Constructive knowledge is a different situation. It's where you are on inquiry notice. You have to conduct an investigation and go elsewhere for the information. Here, the information is being provided to the employee. There's no need to go elsewhere. It's there on a computer system he's familiar with, or he, in fact, used. It's available to him. It's all presented on a silver platter to him. You have no factual determination at all in this, then? It's automatic. As a matter of law, as in the Brown case, if this Court were to conclude that this is a case of constructive knowledge, it would create a split in the circuits on this issue. But the district court recognized that regardless of access and visiting however many times, the plaintiff didn't actually know, but that it was good enough. Isn't that what the Court really said? Well, what the Court also observed, and what the cases have observed in the Brown decision, for example, is if you had to prove that the plaintiff actually read something, it's an impossible question. Why? You ask them under oath, and if they lie, you can send them up for perjury. I mean, you know. What the strong policy reasons, it would make the limitations period meaningless, because anyone could deny or even forget what they did. You need an objective standard. So we should read the statute in order to make, you know, depositions easier? I mean, that's just a very unusual way to approach statutory interpretation. It's a matter of policy. It's the policy of willful blindness. It's the policy of these days we live in a computer age. It's normal to convey information electronically through computer sites. And the Department of Labor, which construes the statute, has a regulation saying, this is permissible. We create havoc. Let's suppose that someone has a computer, the best up-to-date computer, and all the information is sent to them, but there's a fact that they were in a coma after an accident. Do they have actual knowledge? It's all laid out perfectly. It's been sent to their computer. But they don't read it. All right. Well, we're talking about We can't read it in my hypothetical. So is that actual knowledge? I mean, under your argument, it would be. We're talking about someone here who had a Ph.D. in experimental physics. You don't have to answer my question, but it would be helpful to me if you did. Is that actual knowledge? I would say to you that, yes, that's actual knowledge. It doesn't depend upon the mental state of the person. Maybe in the extreme cases always require one-off exceptions. We don't have any extreme exception here. We have a normal situation. This statute, this three-year provision, which has been on the books for quite a while, would be rendered meaningless, and the Department of Labor's regulation would be rendered meaningless, and all the cases, Sixth Circuit and elsewhere, that have held this as actual knowledge, you'd have a conflict in the circuits, and would have to be resolved by the U.S. Supreme Court. So that's the situation that you're in, if you go that way. You also said that the reason Congress made it the way they did is they didn't want plaintiffs to game the system by waiting to see how their investments turn out. What congressional history do we have to show that, as opposed to, I thought ERISA was supposed to protect plaintiffs in this system? That's the congressional intent I've always seen. I'm paraphrasing the judiciary's view of the purpose. So I'm taking it from the cases I read. This is not Buckley opining on the matter. I'm taking it from the case law. And some cases have definitely gone that way, and other cases have gone plaintiff's way. And we seem to have some Ninth Circuit cases that go plaintiff's way. Why are those wrongly decided? I'm not aware of any Ninth Circuit case on this issue of constructive knowledge versus actual knowledge that goes plaintiff's way. Let me turn to the — Well, you — I mean, why is Waller just cast aside? Because of this CF site. Okay. Let me talk about that exactly. So there are two claims. You have to keep these two claims separate in your mind. They're very important. One is the substantive imprudence claim. The other is the process claim. Okay? So what was the substantive imprudence claim? In every case, you know, under Ziegler case, the first thing is to define the claim. The plaintiff defines the claim. If there's one thing in the record that I would wish you to read more than anything else, it would be in Volume 1 of our supplemental excerpt from the hearing on August 10th, 2016, before the magistrate's judge — What page are you referring to? I'm sorry? What page are you referring to? SER 27 through 29. That's — if you want to read three pages of the record, those are the ones I would recommend to you because there the judge says, what is your claim? And the plaintiff's lawyer says, our claim is that — the substantive imprudence claim is that it was improper to invest between 25 and 40 percent of the funds in alternative investments. That's our — that's the core of our claim. So that's the claim. He said they had — that was an unwise policy because it resulted in higher fees and the fund — underperformed other funds that were invested totally in equities. So as we've shown, I think, ad nauseum in the record, the disclosures that were made to Mr. Salima disclosed the percentage allocations to alternatives. It disclosed that these — the strategy underperformed peer category funds that were invested in the domestic equity market. They had higher fees because hedge funds are actively managed strategies and, therefore, there's more expense. It communicated that Intel was doing something different from everybody else, that it wasn't following the crowd. It gave percentages. Other funds were invested 80 percent or more in domestic equities. This fund is invested less than 60 percent in domestic equities, and we're increasing our hedge fund allocation from 10 percent to 25 percent. And it disclosed the strategy. Why are we doing this? We're doing this in the aftermath of the 2008 financial crisis when some of these funds lost 50 percent of their value in the space of a few months for employees who are about to retire. What the strategy was, they wanted to have funds that have a low or negative correlation in equity markets, reduce the volatility, have a long-term view, and not be so fluctuating and at risk what the markets would do. So all those facts that make up his claim I've just read to you on those pages were disclosed to him through electronic disclosures. Let's talk about the process claim now. And this is about Tybill. So this is the other half of the case. I only have a minute and a half to go on this, so I'll do my best. He pled no facts to show any infirmity in the selection process. He relied upon the same facts as he relied on for the basic imprudence claim. In other words, you invested 25 to 40 percent in alternatives. That was an unwise thing. And then he inferred, because there was an unwise substantive policy, the process must have been flawed. Well, in the Mueller-Gate decision of the Second Circuit, they faced the same thing, where the process-related facts trace back to the substantive imprudence facts. And it has — and the Court said there, if all you're doing is inferring from a — you think it was an imprudent investment, that the process must have been flawed, then it all relates back, and the process claim is time-barred. In Tybill and in Waller, all these cases you're concerned about, as the district court judge pointed out, there were specific allegations of infirmities in the process. And, for example, in the Tybill case, which is a case with a fund purchased retail The process infirmity was the failure to investigate alternatives to retail funds, over-reliance upon an outside consultant, and also, in addition to that, choosing funds that had money flowing back to the plant provider. And in those cases, knowing merely that you had retail funds was not disclosure of the flawed process. Here, there are no additional facts that he's relying upon, because his allegations are conclusory. And the judge allowed discovery on this issue — allowed discovery on this issue. And despite allowing discovery on this issue, plaintiff came back with no specific infirmities in the process. So everything relates back to the basic five facts I've already discussed with you. All relates back to the imprudence claim. All relates back to facts that were fully disclosed to him. That's why it's time-borne. Thank you, counsel. Thank you so much. You have some reserved time. Thank you, Your Honor. Just a few brief points. You heard my opposing counsel say that under their view of constructive knowledge, you can be in a coma and be charged with actual knowledge. And I think that's all this Court needs to reject the definition proffered by the defendants about how you interpret actual knowledge under this three-year exception. The district court bought into that, attributed knowledge as a matter of law to Mr. Salima, even after finding on the record, in its findings of fact, that he never saw any of the documents that they say it's relevant. To relax that standard specifically after Congress itself removed constructive knowledge as a trigger for this exception would be, as the Second Circuit has said, repugnant to the plain language of Section 1113, Subsection 2. I also think, just to flag for the Court, that every single case, every single one that the defendants say demonstrate actual knowledge of facts sufficient to trigger the three-year exception for imprudent breach claims involved some knowledge of a fact beyond the face of the planned documents. Every single one, it's uniform. That includes Brown from the Sixth Circuit, which is one of the cases that the defendants heavily rely on. There, you had no dispute, no dispute from the plaintiffs in that case that they knew that the company was going bankrupt and that the fund was worthless. Those are facts outside of the face of the documents that were — that the plaintiffs knew and so could be charged with actual knowledge of. The same is true in the Eighth Circuit Brown case, where the participant in that case, in a deposition, conceded, admitted that he knew the plan was undiversified and that that was a flaw in the process. The same is true of Citigroup, another case, Young, all of them. They all, every single one that has triggered the three-year exception, the courts have said, you need to know something more than what's on the face of the documents. Sotomayor, what is your response to counsel's argument that there is no — essentially is no separate process claim here because it's all inference from the substantive claim? Sure. I'm paraphrasing. Sure. Sure. So every imprudent investment breach claim requires proof of both process — flaw in process and substantive imprudence. It's both. And that's baked into the statute itself. But what is the — what is the factual basis for the process claim here? Sure. And is it distinct in any way? It is. Now, of course, in most of these cases — I will answer that question. But in most of these cases, the participants don't have any insight into how the fiduciaries selected the funds. We are not — we have not been through discovery yet in this case on the merits of these claims to know what they did. But we do know that in 2014, publicly available material came out that accused the fiduciaries in this case of engaging in overly risky and unconventional investments. And that is in the complaint. Those are facts. There's an Oregonian report, newspaper report, that identified these funds as unconventional and risky. And there's an independent investment assessment that said the same thing. And it's those facts from 2014 that permit the inference that the — that the fiduciaries engaged in a flawed process. It is not — it doesn't have anything to do with the allegations that were targeting the — the substantive unreasonableness of the — of the — of the investment allocations. And I'll say one more thing about that, Your Honor. If you look at Mulegay, which is the best case they have for this theory that you can — you can trace everything back to whatever the allegations are that target the substantive unreasonableness, in that case, the specific facts that the Second Circuit held were — were known to the participants included, and I'm quoting, widely publicized warnings about the fund, quote, alarming public filings, analyst warnings, and articles in financial and general press. It's that kind of information, facts that can allow you to infer a flawed process that you need if you're going to start this trigger. And here, it's undisputed that — that Mr. Salima didn't have knowledge of that, and at the earliest, it was 2014. Thank you, counsel. Thank you, Your Honor. The case just argued is submitted, and once again, we really appreciate very helpful arguments from both counsel. And we are adjourned for this morning's session.
judges: Wallace, Graber, Lasnik